**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| W AGRIPACKING, S.A. DE C.V., a Mexican corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. CIV 12-738-TUC-CKJ |
| FRESH TOUCH DISTRIBUTING, INC., an Arizona Corporation, and MELONS WEST OF NEW YORK, INC., a New York corporation, | ) ) ) ) ) | **ORDER** |
| Defendants. | ) ) ) | |

Pending before the Court are the Motion to Dismiss (Doc. 10) and the Motion to Dismiss Cross-Claim (Doc. 15) filed by Defendant Melons West of New York ("Melons West"). Additionally, Melons West has filed a Motion to Strike Opposition (Doc. 21).

I. *Factual and Procedural Background*

On October 10, 2012, Plaintiff W[1] Agripacking, S.A. De C.V. ("Agripacking") filed a Complaint[2] with this Court alleging a Breach of Contract, a Breach of Third Party

---

[1]The Complaint names Plaintiff as W Agripacking, S.A. De C.V., a Mexican corporation. Subsequent documents, *see* Doc. 13 and 18, refer to Plaintiff as Woolfolk Agripacking, S.A. De C.V. As Plaintiff has not amended the Complaint or taken any other action to modify the caption (e.g., request Court to order a party to be substituted or to modify the caption), the Court accepts the Plaintiff as W Agripacking, S.A. De C.V.

[2]The November 20, 2012, Notice of Errata provides the two exhibits referred to in the Complaint.

1   Beneficiary Contract, a Failure to Account and Pay Promptly, a violation of the Uniform

2   Commercial Code, a violation of A.R.S. § 12-341.01(A), and a Conversion against

3   Defendants Fresh Touch Distributing, Inc. ("Fresh Touch") and Melons West.  Agripacking

4   also alleged an additional claim of Breach of Contract only against Fresh Touch.

5

6          A.  *Agripacking Complaint*

7          In its Complaint, Agripacking alleges that, from December 2011 through April 2012,

8   Agripacking and Fresh Touch entered into negotiations which culminated in an oral contract

9   subsequently confirmed in writing (the "Oral Contract") for the sale of fairy tale pumpkins

10  (the "Produce").  Agripacking was to deliver approximately 50 truckloads ("Loads") of the

11  Produce at the rate of $0.19 per pound, which delivery was to be made free on board to Fresh

12  Touch in Nogales, Arizona, during May through July 2012.  Fresh Touch agreed to advance

13  a $25.00 "pick and pack" fee to Agripacking immediately upon receipt of each Load for each

14  bin contained within the Load.  Payment was to be made within 30 days of the receipt of each

15  Load, less any pick and pack fees advanced by Fresh Touch.

16         A brokerage fee, pursuant to an oral agreement between Agripacking and Fresh Touch

17  (based upon prior business deals between the parties), entitled Fresh Touch to deduct 10%

18  from the total amount due to Agripacking.

19         On or about April 4, 2012, Agripacking, Melons West, and Fresh Touch entered into

20  a written contract (the "Written Contract") whereby Fresh Touch and Melons West agreed

21  to purchase the full amount of the Produce from Agripacking, at a price of $0.19 per pound.

22  Neither the Oral Contract nor the Written Contract provided for rejection of the Produce

23  based on size.

24         During May through June 2012, Agripacking delivered to Fresh Touch in Nogales,

25  Arizona 55 Loads of Produce that Fresh Touch accepted. The 55 Loads contained a total of

26  73,078 bins weighing approximately 660 pounds per bin.  Fresh Touch then shipped the

27  Produce to Melons West; Melons West inspected and accepted approximately 20 Loads of

28  the Produce, including small, medium and large sizes of the Produce.  Melons West then

1    refused to accept the remaining Loads from Fresh Touch.

2          Melons West and Fresh Touch have each failed to pay Agripacking for the Produce

3    they accepted.  Fresh Touch only advanced Agripacking $43,350.00 in pick and pack fees

4    for bins shipped by Agripacking.  As a result, a total principal amount of $304,033.08

5    remains due and owing from Fresh Touch and Melons West.

6

7          B.  *Fresh Touch Answer, Crossclaim and Counterclaim*

8          On December 10, 2012, Fresh Touch filed an Answer, Crossclaim and Counterclaim.

9    As its Crossclaim, Fresh Touch alleges a claim for indemnification against Melons West.

10   As its Counterclaim, Fresh Touch alleges claims of Breaches of Contract, Breach of the

11   Covenant of Good Faith and Fair Dealing, Declaratory Relief, Tortious Interference with

12   Business Relations and Prospective Business Advantage, Injurious Falsehood, and

13   Defamation against Agripacking.

14         In its Answer, Crossclaim and Counterclaim, Fresh Touch denies Agripacking and

15   Fresh Touch made an oral contract; however, it admits Agripacking's Exhibit B is a true and

16   correct copy of a document signed by Melons West and Agripacking wherein Agripacking

17   was to provide produce to Melons West with Fresh Touch acting as the broker.  Fresh Touch

18   alleges that, in November 2011, Agripacking and Fresh Touch entered into an agreement (the

19   "Agreement") pursuant to which Fresh Touch advanced various costs and the seed for

20   Agripacking's production of the unique fairytale pumpkin ("Pumpkin"), with production to

21   begin in April 2012.  In return, Agripacking agreed to reimburse Fresh Touch for all costs

22   and pay a 12% commission for all sales.[3]  As part of effectuating that Agreement, Fresh

23   Touch brokered the sale of some of that Pumpkin as between Agripacking and Melons West;

24   Fresh Touch acted solely as a broker and was not purchasing any produce.  Fresh Touch

25   agreed to a $25 "pick and pack" fee per bin.  Fresh Touch advanced the agreed-upon "pick

26

27         [3]Agripacking, by and through its principal Jose Antonio Woolfolk Bravo, Jr.
     ("Woolfolk"), agreed to a 12% brokerage commission at Fresh Touch's office in Santa Cruz
28   County, Arizona in November 2011.

1   and pack" fees for produce that was sellable.

2        Pursuant to the Agreement, Fresh Touch provided Agripacking with the seed for the

3   Pumpkin and other crops.

4        Although Agripacking was to begin delivery of the Pumpkin no later than April 24,

5   2012, Fresh Touch received no Pumpkin between April 24 and May 18, 2012.  On May 7,

6   2012, Fresh Touch met with Agripacking's principals to discuss the untimely production of

7   the Pumpkin and, based on that untimeliness, verbally agreed the price would be reduced

8   from $0.19 to $.018 per pound.  On May 18, 2012, Fresh Touch received the first loads of

9   Pumpkin from Agripacking.

10       Although Agripacking was advised that Melons West wanted only large and medium

11  Pumpkin, broker Fresh Touch received small and extra small Pumpkin in the initial (and

12  untimely) delivery from Agripacking.  Fresh Touch used reasonable efforts to sell the small

13  and extra small Pumpkin; however, as there was no market for that Pumpkin, Fresh Touch

14  was forced to dump it in accordance with PACA regulations.

15       Fresh Touch provided Melons West with twenty loads of Pumpkin, eleven of which

16  were comprised of Pumpkin delivered by Agripacking and nine of which were procured from

17  other growers.  Agripacking flooded the limited market by shipping and selling Pumpkin to

18  Fresh Touch's competitors at a price-per-pound lower than provided for in Exhibit B.[4]

19       The Pumpkin received by Fresh Touch was rotten and infested with bugs.  Fresh

20  Touch hired a re-packer to salvage the Pumpkin at a cost to Fresh Touch of $20,274.

21       For reasons outside of Fresh Touch's control, Melons West stopped picking up loads

22  of Pumpkin from Fresh Touch after receiving the initial twenty loads.  Fresh Touch, at all

23  relevant times, continued to be ready and willing to broker the sales between Agripacking

24  _____

25       [4]Fresh Touch became aware that Agripacking was negotiating with other distributors
    regarding the sale of the Pumpkin for which Fresh Touch had provided the seed and
26  advanced costs.  Fresh Touch objected and informed Agripacking that, pursuant to the
    Agreement, Pumpkin needed to be shipped through Fresh Touch. Agripacking assured Fresh
27  Touch it would receive all of the Pumpkin.  At least one other distributor continued to receive
28  loads of Pumpkin.

1  and Melons West, although Agripacking began flooding Fresh Touch with deliveries of
2  Pumpkin that was undersized, bug-infested and rotting.

3       On June 20, 2012, Fresh Touch advised Melons West that it had only picked up
4  eleven of the fifty loads of Pumpkin.  On June 22, 2012, Fresh Touch advised Melons West
5  that the remaining loads of Pumpkin were at Fresh Touch's warehouse waiting to be picked
6  up and that Fresh Touch would use reasonable efforts to sell that Pumpkin and mitigate
7  Melons West's losses.

8       On August 21, 2012, Fresh Touch filed an informal PACA complaint (the "Informal
9  Complaint") against Melon West regarding Melons West's refusal to pick up the Pumpkin
10 from Fresh Touch's warehouse.   At that time, Fresh Touch calculated it had incurred
11 $238,557.85 in unpaid invoices as a result of Melons West's failure to pick up the Pumpkin.
12 On November 8, 2012, PACA issued its ruling on that Informal Complaint and determined
13 that Melons West was, pending a formal PACA ruling, likely liable to pay for $238,557.85
14 in invoices, plus interest.

15      Agripacking has been paid all it is entitled to from Fresh Touch and, in fact, owes
16 Fresh Touch over $95,000 for advances of costs.  Agripacking failed to pay back the various
17 costs advance by Fresh Touch related to Agripacking's production of Pumpkin and failed to
18 pay a 12% commission for all sales of the same.   Fresh Touch incurred $95,256.54 in
19 damages for unreimbursed out-of-pocket costs and lost out on the value of its 12 percent
20 brokerage commission for much of the Pumpkin, including the Pumpkin diverted to other
21 distributors and the balance of the Pumpkin that should have been sent to Melons West.

22      Lastly, Fresh Touch alleges Agripacking and its principals have openly questioned
23 Fresh Touch's integrity and business to other growers in Mexico.  Specifically, Agripacking
24 has stated that Fresh Touch (and its principals) are dishonest in their business practices,
25 Agripacking knew those statements were untrue and made them in an effort to persuade
26 growers to stop dealing with Fresh Touch, and as a result of those untrue allegations, Fresh
27 Touch has lost two contracts with growers in Mexico.

28

II.  *Motion to Strike*

Melons West requests Agripacking's Opposition to its Motion to Dismiss Fresh Touch's Complaint be stricken because Agripacking does not have standing either to oppose the Motion to Dismiss Fresh Touch's crossclaim nor to request leave for another party's pleading to be amended.  As no response to this motion has been filed, the Court will grant the motion.  *See* LRCiv 7.2(i) (failure to file a response "may be deemed a consent to the . . . granting of the motion).

III.  *Motion to Dismiss*

Melons West moves for dismissal of the claims against it by Agripacking and Fresh Touch for failure to state a claim upon which relief cannot be granted pursuant to Fed.R.Civ.P. 12(b)(6).  A complaint is to contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Rule 8(a), Fed.R.Civ.P.  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Moreover, the United States Supreme Court has found that a plaintiff must allege "enough facts to state a claim to relief that is plausible on its facts."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).  While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a right to relief above the speculative level."  *Id*. at 1964-65; *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss[.]").  The Court also considers that the Supreme Court has cited *Twombly* for the traditional proposition that "[s]pecific facts are not necessary [for a pleading that satisfies Rule 8(a)(2)]; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Erickson v. Pardue*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167

1   L.Ed.2d 929 (2007).  Indeed, *Twombly* requires "a flexible 'plausibility standard,' which

2   obliges a pleader to amplify a claim with some factual allegations in those contexts where

3   such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143,

4   157-58 (2nd Cir. 2007); *see also Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009)

5   (for a complaint to survive a motion to dismiss, the non-conclusory "factual content," and

6   reasonable inferences from that content, must be plausibly suggestive of a claim entitling the

7   plaintiff to relief).

8       This Court must take as true all allegations of material fact and construe them in the

9   light most favorable to the non-moving party.  *See Cervantes v. United States*, 330 F.3d

10  1186, 1187 (9th Cir.  2003).  In general, a complaint is construed favorably to the pleader.

11  *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled

12  on other grounds*, 457 U.S. 800.  Nonetheless, the Court does not accept as true unreasonable

13  inferences or conclusory legal allegations cast in the form of factual allegations.  *Western

14  Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

15

16      A.  *Existence of Contract*

17      Melons West points out that Agripacking's first, second and fourth through sixth

18  causes of action rely on an April 4, 2012 document as the contractual agreement; Melons

19  West also argues that the seventh cause of action for conversion also relies on that same

20  contractual agreement.  Additionally, Melons West points out that Fresh Touch's cross-claim

21  against Melons West also depends upon the existence of an enforceable contract between

22  Agripacking and Melons West.  However, Melons West points out that the Written Contract

23  specifically states, "This acknowledges the mutual agreement between Fresh Touch

24  Distributing, Inc. Melons West of New York, Inc. regarding contracted pricing for FAIRY

25  TALE PUMPKIN 24" BINS."  Doc. 9-2.  The Written Contract also states, "The above-

26  named item will be sold to Melons West of New York, Inc. at a price of 0.19 P/LB f.o.b.

27  FOR THE TIME PERIOD OF April 24, 2012 thru June of 2012.  The approximate quantity

28  to be purchased is 50 TRUCKLOADS."  *Id*.  The Written Contract was approved and

1    recognized by the signatures of Melons West of New York, Inc., Jason Osleer[5] (Buyer);

2    Fresh Touch Distributing, Inc., Patricia Lugo (Distributor), and; Agripacking, Jose Antonio

3    Woolfolk Bravo (Grower).  *Id.*

4         Melons West argues that, because the Written Contract does not reflect a mutual

5    agreement involving Agripacking, Agripacking cannot sue for a breach on any claims based

6    on this contract.  Melons West argues that the mutual agreement between Melons West and

7    Fresh Touch is integrated as the final and complete statement of their agreement,

8    Agripacking's offered interpretation adding it as a party is not plausible, and Agripacking has

9    not yet offered parol evidence to support its "interpretation" for the Court to consider.

10   Furthermore, Melons West argues that, because it has no obligation to Agripacking under the

11   Written Contract and because it was not a party to or obligated under any contract between

12   Fresh Touch and Agripacking, Melons West cannot be an "active wrongdoer" for any breach

13   of contract claim for purposes of indemnity.  In other words, Melons West argues that if it

14   only had a contractual obligation to Fresh Touch, there is no basis for the implied

15   indemnification of Fresh Touch by Melons West.[6]

16        Agripacking argues, however, that the differing allegations and arguments of the

17   parties show that the Written Contract is not one lacking ambiguity and is not intended to be

18   an exclusive statement of the terms of the contract.  *Apollo Group, Inc. v. Avnet, Inc.*, 58 F.3

19   477, 482 (9th Cir. 1995), *quoting Anderson v. Preferred Stock Food Markets, Inc.*, 175 Ariz.

20   208 (App. 1993).  Therefore, Agripacking argues that the parties may introduce evidence of

21   "prior or contemporaneous agreements or negotiations" that add to, subtract from, vary or

22   contradict the terms of the written agreement.  "*Bosse v. Crowell Collier and Macmillan*, 565

23   F.2d 602, 609 (9th Cir. 1977).

24   

25        [5]This name is not clear on the docketed copy of the Written Contract.

26        [6]Because the Court determines herein that a contractual relationship between
     Agripacking and Melons West has adequately been alleged in the Complaint, the Court does
27   not address whether Fresh Touch's claim of indemnification is a viable claim without such
28   a contractual relationship.

Arizona permits the consideration of parol evidence:

> Arizona has always permitted parol evidence to be received on the issue whether the written agreement is truly an integrated statement of the parties' intended bargain. Arizona, however, also follows the so-called "Corbin approach" to contract interpretation, and permits the consideration of extrinsic evidence, not only on the issue of contract integration, but on the issue of contract interpretation as well, and without the necessity of a threshold finding of contract ambiguity.
>
> Procedurally, the trial court receives the proffered parol evidence, not only on the issue of whether the parties intended the written agreement to be an integrated statement of their bargain, but also on the issue whether the contract language is reasonably susceptible to the interpretation advocated by the proponent of the evidence. Parol evidence is admissible, and may be considered by the trier of fact, in determining the meaning intended by the parties, if the contract language is susceptible to more than one reasonable interpretation. The parol evidence rule still bars the receipt of evidence that is offered in support of an interpretation to which the Court determines the contract language is not reasonably susceptible. The Court may not always be in a position to determine the issue of admissibility when such parol evidence is initially offered. In that circumstance, the trial judge has discretion to admit the evidence conditionally subject to a later determination of relevance, or to consider it outside the presence of the jury. Whether the contract language is reasonably susceptible to the interpretation advocated by the proponent of the parol evidence, however, remains a question of law for the Court. Technically speaking, accordingly, Rule 104, which deals only with preliminary factual questions that determine admissibility, does not apply.

1 Ariz. Prac., Law of Evidence § 104:8 (4th ed. 2013), *citations omitted*.

In this case, the Written Contract includes the signature of a business that does not appear to be part of the agreement. That signatory inclusion supports Agripacking's assertion that the Written Contract is not fully integrated. As "an issue exists as to whether a negotiated contract is integrated," this Court is to "receive evidence on all of the surrounding circumstances." *Anderson v. Preferred Stock Food Markets, Inc.*, 175 Ariz. 208, 210-11, 854 P.2d 1194, 1196-97 (App. 1993). Although Melons West argues that Agripacking has not presented parol evidence to support its assertion, the Court does not find consideration of such evidence at this time, in determining whether a claim has been stated, is appropriate. *See e.g. Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 854 P.2d 1134 (1993) (consideration of parol evidence at summary judgment and trial phases). The Court finds the non-conclusory factual allegations and reasonable inferences from that content plausibly suggest a contract existed between the parties, that Agripacking was a third party beneficiary of the Written Contract, and that a wrongful conversion occurred.

Furthermore, because a contractual relationship has been adequately alleged between Agripacking and Melons West, the Court finds Fresh Touch has adequately stated a claim for indemnification.

Accordingly, IT IS ORDERED:

1.    The Motion to Strike Opposition (Doc. 21) is GRANTED.    Plaintiff's Opposition to Defendant Melons West's Motion to Dismiss Fresh Touch's Complaint is STRICKEN.

2.    The Motion to Dismiss (Doc. 10) is DENIED.

3.    The Motion to Dismiss Cross-Claim (Doc. 15) is DENIED.

DATED this 6th day of September, 2013.

Cindy K. Jorgenson
United States District Judge

- 10 -